Rafael Argüelles Fernández, Plaintiff and Appellee, *v.* Pedro Cosme et al., Defendants and Appellants.

No. 6458.   Argued November 6, 1934.—Decided November 23, 1934.

*Armando Miranda* for appellants.   *Ignacio Morales Acosta* and *Dubón & Ochoteco* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The only question to be determined in this case is the amount of the costs which the defendants are entitled to recover.

The memorandum filed by them comprises the following items: $15 for fees of the clerk; $40 for certificates issued by the clerk; $45 for stenographer's fees, and $1,500 for attorney's fees. It was impugned. The .court approved the items for the fees of the clerk and the stenographer, struck out that for certificates, and reduced the attorney's fees to $75.

██ The item of forty dollars for certificates was properly stricken out because the defendants failed to provide the court with sufficient evidence to justify the same. Was the réduction of attorney's fees to seventy-five dollars wise? To answer that question we should study the facts and the attendant circumstances.

In March, 1932, the plaintiff Argüelles asked the District Court of Bayamón to decree that the defendants be ousted from a certain property belonging to him which they were occupying without paying any rental or other consideration whatever.

The defendants sought through their attorney to litigate *in forma pauperis,* and this being granted, they answered the complaint alleging that it did not state facts sufficient to constitute a cause of action, and denying each and every one of the averments.

The case went to trial, and six days after the evidence was introduced and the case was submitted to the court for decision, the plaintiff filed a motion for the dismissal thereof and the court rendered judgment of nonsuit with costs on him but excluding attorney's fees therefrom. The defendants appealed and obtained a reversal of the judgment. *Argüelles* v. *Cosme,* 44 P.R.R. 162.

The case was remanded to the district court *a quo,* which then decided the same on its merits, dismissing the complaint, without special imposition of costs. The defendants appealed anew as to the pronouncement of costs and obtained likewise the reversal thereof. *Argüelles* v. *Cosme,* 45 P.R.R. 138.

Thereupon they filed the memorandum of costs to which we referred at the outset of this opinion.

Disregarding the work done before this Supreme Court as being unrecoverable according to the law and the jurisprudence, it clearly appears from the foregoing that the attorney for the defendants had to devote several days to the study of the case and the defense of his clients in open court. This is not a complicated case involving large amounts, but it is a litigation containing serious and interesting questions of fact and law, as may be easily concluded by examining the allegations and the transcript of the evidence which served as basis for the judgment of the court on the merits, and from the opinion delivered by its learned judge in support of the same, a part of which it seems advisable to transcribe. It reads:

"Until scarcely a year ago, our civil legislation deviated in no sense from the Spanish Civil Code in covering such a complex matter as that of share-cropper's contracts (*aparcería*). The Revised Civil Code of 1902, in its Section 1482, followed the same words of Section 1579 of the Spanish Code, to wit: 'Leases for partnerships of arable lands, breeding cattle, and for industrial or manufacturing establishments shall be governed by the provisions relating to articles of copartnership and by the agreements of the contracting parties, and, in their absence, by the customs of the country.' The first question which the constructors of the law asked themselves was the following: What is such partnership? Manresa answered: 'It will be useless to look for its legal definition in the Code. Everybody agrees, however, in that such a partnership exists where a person grants the enjoyment or use of a thing to another, receiving in lieu thereof a proportional part of the fruits yielded by such a thing.' The following was the next question: What is the juridical nature of such partnerships (*aparcería*)? The Code classes the same as leases and directs that they shall be governed by the provisions relating to the contract of partnership. The writers on the subject differ as to the construction to be given to that legal provision; and the Spanish courts have not succeeded in fixing a consonous and unanimous conclusion and, in deciding, they apply the doctrine conforming to the facts of the proceeding involved. And the third question arises: Does an unlawful detainer lie in cases of such con-

tracts (*aparcería*)? As may be seen by the judgments of July 29, 1902, December 2, 1904, July 4, 1908, January 20, 1911, June 2, 1913, and March 12, 1917, the rigours of first decisions need to be tempered by subsequent ones.

"The need of carrying the reform into effect was already acknowledged in 1905, because 'the demands of special cases must of necessity be considered and met by legislators and rulers, in relation with different aspects of the law not clearly defined by the Civil Code, or diverged from the prevailing principles of modern judicial life."

"We have no notice of the reform having been confronted in Spain. It was not accomplished in Puerto Rico, until May 4, 1931, although partially, when Act number 76 was enacted. We have said partially, because the act seems only to refer to share-cropping contracts, leaving the Code to subsist as to partnerships of cattle breeding and for industrial or manufacturing establishments, which differ so much from those relating to rural tracts of land.

"The reform was necessary. Such contract of share-croppers (*aparcería*) is one of the most popular manifestations among us of agricultural exploitation, for, as has been correctly said, capital and labor coincide, through said contracts, in one common action; in an immediate mutual share of gains and risks which they defend and secure, the interest of the owner of the land and that of the cropper who cultivates the same intimately mingling them at the same time.

"The Puerto Rican legislator answered to the first of the historic questions by transcribing in the statute the following definition: 'By share-cropping contract shall be understood any verbal or written agreement by virtue of which one of the parties agrees to cultivate tillable land of the other party and the latter agrees to pay to the former for said work a share of the crops harvested or of the market value thereof.' To the second question it answered by disregarding the classification of lease and establishing the existence of a very special contractual act; and, rejecting all regulation by the provisions relating to the share-cropper contract, he established the rules by which it shall be governed. And he answered the third by establishing the unlawful detainer proceeding. Our legislator so overcame the difficulties which seemed to oppose him in dissolving an obligation which, in accordance with its nature, should be endowed with all such flexibility as is necessary to conform it to the modalities of a simple and speedy procedure.

"We say all this in order to decide, by overruling it, the demurrer for want of a cause of action alleged by the defendant. In

the light of Act number 76, the complaint states all the facts needed to be set up in cases of this nature, and perhaps even more.''

The district judge continues to analyze the evidence introduced which fills forty-three pages of the transcript of the evidence, and concludes that it does not show that the verbal contract of share-cropper (*aparcería*) appearing therefrom was due at the date of the interposition of the complaint, and therefore, that the unlawful detainer sought did not lie.

Thus, letting the facts speak for themselves, the modification of the judgment is imperative, for the sum of seventy-five dollars fixed by the court for the payment of attorney's fees seems to be clearly inadequate. Considering the attendant circumstances, two hundred and fifty dollars seems to us the least sum that can be fixed therefor.

The order appealed from must be modified to that effect, and thus modified, affirmed.